UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BERNARD GELB,

              Plaintiff,

       v.                                  **MEMORANDUM AND ORDER**

PRESTON NIBLACK, *individually and in his*      22-CV-2601 (RPK) (LB)
*official capacity as Commissioner of the New*
*York City Department of Finance,*

              Defendant.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Bernard Gelb brings this suit against defendant Preston Niblack, the Commissioner of the New York City Department of Finance ("DOF"), alleging that DOF's policy of canceling undeposited tax refund checks violates the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment and that DOF has failed to comply with New York's Freedom of Information Law ("FOIL"), N.Y. PUB. OFF. §§ 84–90. Defendant moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

    The following facts are drawn from the operative complaint and are assumed to be true for the purposes of this order.

    DOF has a policy of canceling all tax refund checks that are not deposited or cashed within six months of issue. Compl. ¶ 11 (Dkt. #1). DOF does not notify check recipients before their checks are canceled. *Ibid*. Nor does DOF provide an opportunity for check recipients to be heard or to object before cancelation. *Id*. at ¶ 16. And DOF does not pay check recipients interest on unclaimed funds in DOF's possession. *Id*. at ¶ 20.

1

On September 6, 2021, plaintiff, who seeks to "develop a business relationship" with DOF refund check recipients, *see id.* ¶ 40, submitted a FOIL request to DOF seeking a list of all "stale-dated outstanding check[s]" payable to "businesses and vendors" and "still outstanding after one year," including both "undelivered checks and undelivered electronic payments." Compl., Ex. A 17 (ECF Pagination) (Dkt. #1). Plaintiff requested this information for the period from August 1, 2020, to March 31, 2021, and indicated that he was not requesting information about checks worth less than $50,000. *Ibid.* Additionally, for each check of this kind, plaintiff requested the "document or check number," "payment date," "payment amount," "vendor or supplier[']s name and address," and "all relevant identification numbers." *Ibid*. (capitalization altered).

On December 30, 2021, DOF responded to plaintiff's FOIL request with "three columns of refund check information listing serial number, check amount and date issued." Compl., Ex. G 38 (ECF Pagination) (Dkt. #1). But the agency did not provide "payee name and address and any other relevant identification numbers" because "[t]he requested record does not exist in agency files and would involve leveraging multiple databases to compile." Compl., Ex. E 30 (ECF Pagination) (Dkt. #1); *see* N.Y. PUB. OFF. § 89(3)(a) (providing that, as a general matter, "[n]othing in this article shall be construed to require any entity to prepare any record not possessed or maintained by such entity"). Plaintiff appealed, arguing that fulfilling his request would not require the creation of a new record. *See* Compl., Ex. F 33 (ECF Pagination) (Dkt. #1). DOF denied that appeal. *See* Compl., Ex. G 38.

Plaintiff then filed this lawsuit against DOF Commissioner Preston Niblack in both his individual and official capacities. Plaintiff primarily alleges that DOF's policies of canceling undeposited refund checks without notice to check recipients and failing to pay interest to check recipients violate the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause. Compl. ¶¶ 20–21, 43–53. Plaintiff also seeks a declaration that DOF's response

2

to plaintiff's FOIL request violated state law and an injunction ordering the agency to turn over all the requested records. *See id.* at ¶¶ 54–59. Plaintiff also asserts that, because he "specialize[s] in finding persons to whom the Government owes money and helping these persons obtain the funds to which they are entitled," Pl.'s Aff. in Opp'n to Mot. to Dismiss ("Pl.'s Aff.") ¶ 5 (Dkt. #16), DOF's inadequate FOIL response deprived him of "a constitutional right" to "develop a business relationship with [check recipients]." Compl. ¶¶ 41, 60.

Defendant now moves to dismiss. As relevant here, defendant argues that plaintiff lacks standing to press his claims based on constitutional injuries to check recipients. *See* Mot. to Dismiss 9–10 (Dkt. #14).[1] Defendant further argues that plaintiff's FOIL-based constitutional claims fail because plaintiff has not asserted a protected property interest, *id*. at 12, and that the Court should decline to exercise supplemental jurisdiction over plaintiff's FOIL claims, *id*. at 16.

## STANDARD OF REVIEW

To survive a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving by a preponderance of the evidence that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (same). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations and ellipsis omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss for failure to state a claim if the complaint does not contain "enough facts to state a claim to relief that

---

[1] The pages of defendant's motion to dismiss are numbered in romanettes. *See generally* Mot. to Dismiss. For the sake of clarity, cites to defendant's motion to dismiss will use the corresponding Arabic numerals.

3

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to plausibly state a claim and is properly dismissed when "the allegations in a complaint, however true, could not raise a claim of entitlement to relief" as a matter of law, *Twombly*, 550 U.S. at 558, or when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" as a matter of law. *Iqbal*, 556 U.S. at 679.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted. Plaintiff lacks standing to press his claims that defendant violated the rights of DOF check recipients under the Takings or Due Process Clauses, and he has not plausibly alleged that defendant violated his constitutional rights by denying his FOIL request. I decline to exercise supplemental jurisdiction over plaintiff's FOIL claims under New York law.

### I. Plaintiff Lacks Third-Party Standing to Challenge DOF's Check-Cancelation Policy on Behalf of Check Recipients

Defendant's motion to dismiss plaintiff's check-cancelation claims for lack of standing is granted. Plaintiff does not allege that he was ever entitled to a refund from DOF, that DOF issued

4

him a refund check, or that DOF canceled a refund check owed to *him*.  *See generally* Compl. Instead, plaintiff seeks to assert the constitutional claims of check recipients who are not parties to this lawsuit.  *See, e.g.*, Compl. ¶ 45 ("The Due Process and Taking Clauses of United States Constitution require [check recipients] to receive a notice and an opportunity to appear and respond, prior to being deprived of their unclaimed money.").

Litigants are "normally bar[red] . . . from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."  *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).  But the rule is not absolute, and the Supreme Court has "recogniz[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another."  *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004).  To do so, however, a plaintiff must establish "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  *Keepers*, 807 F.3d at 41 (quoting *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015)).  On the first point, "[a] close relation supporting third-party standing exists when 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'"  *Fenstermaker v. Obama*, 354 F. App'x 452, 455 (2d Cir. 2009) (quoting *Singleton v. Wulff*, 428 U.S. 106, 115 (1976)).

To satisfy the first requirement, plaintiff invokes a line of cases indicating that a business relationship between an injured party and prospective litigant can qualify as a close relationship for purposes of standing.  Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 11–13 (Dkt. #16).  Plaintiff is correct that the Supreme Court has recognized standing based on business relationships in some cases.  *See, e.g.*, *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990) (holding that an attorney may assert the rights of his clients to challenge the constitutionality of particular fee arrangements); *Carey v. Population Serv. Int'l*, 431 U.S. 678, 682–84 (1977)

5

(holding that a business selling contraceptive devices may assert right of customers to purchase items); *Craig v. Boren*, 429 U.S. 190, 194 (1976) (holding that beer vendors had standing to assert the equal protection rights of their customers).  But it has recently emphasized the limited value of *hypothetical* client relationships—as opposed to *existing* relationships—in grounding third-party standing.  *See Kowalski v. Tesmer*, 543 U.S. 125 (2004).  Thus, in *Kowalski*, the Court noted that it had recognized in past cases that an attorney-client relationship could support standing.  *Id.* at 131.  But it held that the plaintiff-attorneys did not have third-party standing based on "a future attorney-client relationship with as yet unascertained Michigan criminal defendants who will request, but be denied, the appointment of appellate counsel," reasoning that an "*existing* attorney-client relationship is, of course, quite distinct from the *hypothetical* attorney-client relationship posited here."  *Ibid.*  More recently still, courts have applied *Kowalski* beyond the attorney-client context to hold that "parties may not premise third-party standing on relationships with hypothetical future clients" in general.  *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 20 (S.D.N.Y. 2022) (quoting *Fenstermaker*, 354 F. App'x at 455) (rejecting standing for housing developer seeking to assert rights of potential home purchasers); *BMG Monroe I, LLC v. Village of Monroe*, No. 20-CV-1357 (NSR), 2022 WL 1094538, at *9 (S.D.N.Y. Apr. 12, 2022) (same).

      Applying these principles, two district courts in this Circuit have denied plaintiff third-party standing to press claims very similar to those in this lawsuit.  In both cases, plaintiff—as he does here—sought to assert constitutional claims on behalf of the owners of funds he alleged had been wrongfully retained by government entities.  *See Gelb v. Fed. Rsrv. Bank of N.Y. (Gelb I)*, No. 12-CV-4880 (ALC), 2016 WL 4532193, at *1, 3 (S.D.N.Y. Aug. 29, 2016) (asserting rights of bondholders allegedly owed bonds by the Federal Reserve Bank of New York); *Gelb v. U.S. Dep't of Homeland Sec. (Gelb II)*, No. 15-CV-6495 (RWS), 2017 WL 4129636, at *1, 8 (S.D.N.Y.

Sept. 15, 2017) (asserting rights of individuals with unclaimed funds held by the Department of Homeland Security). In both cases, plaintiff "argue[d] that he ha[d] third-party standing to assert the rights of [owners of unclaimed assets] who do not know that [defendant] holds their unclaimed bonds and who may, upon learning that information, retain [plaintiff] to secure the bonds on their behalf." *Gelb I*, 2016 WL 4532193, at *3; *see Gelb II*, 2017 WL 4129636, at *1, 8. And in both cases, the courts held that, as in *Kowalski*, plaintiff's asserted "future relationship with yet unascertained customers" was too "speculative" to support third-party standing. *Gelb I*, 2016 WL 4532193, at *3; *see Gelb II*, 2017 WL 4129636, at *8 (holding that plaintiff had not demonstrated "a close relationship with the owners of the unclaimed moneys").

So too here. Plaintiff cannot demonstrate a sufficiently close relationship with the check recipients whose rights he seeks to assert. Plaintiff asserts that he satisfies the close-relationship requirement because "[f]or 25 years, [he] ha[s] had] a special mission of finding person to whom the Government owes money and helping these persons obtain the funds to which they are entitled." Pl.'s Aff. ¶ 39. But plaintiff has never alleged that he currently has a business relationship with anyone who has been issued a refund check by DOF. Indeed, the complaint suggests just the opposite: plaintiff alleges that DOF's policies deny him "the *opportunity* to develop a business relationship with [check recipients]." Compl. ¶¶ 41, 60 (emphasis added). Because it appears that plaintiff "do[es] not have a 'close relationship' with [his] alleged 'clients,'" *Kowalski*, 543 U.S. at 131, he is not entitled to assert their rights under the Fifth and Fourteenth Amendments.

In arguing to the contrary, plaintiff relies primarily upon the D.C. Circuit's 1999 decision in *Lepelletier v. Fed. Deposit Ins. Co.*, 164 F.3d 37 (D.C. Cir. 1999), which found that an "independent money finder" who sought to assert the Due Process rights of depositors of funds at banks held in receivership by the Federal Deposit Insurance Corporation had standing to do so.

7

*Id.* at 39; *see* Pl.'s Opp'n 9–15. But the Supreme Court's decision in *Kowalski* "draws into question the continued vitality of the *Lepelletier* Court's conclusion that third-party standing may be based on the 'vendor-vendee relationship alone,'" and in particular on a *hypothetical* vendor-vendee relationship. *Gelb I*, 2016 WL 4532193, at *4. And the Second Circuit has applied *Kowalski* to reject a plaintiff's assertion "that he satisfie[d] the 'close relation' prong of third-party standing based on a 'vendor-vendee relationship.'" *Fenstermaker*, 354 F. App'x at 455. This precedent, non-binding though it is, strongly suggests that *Lepelletier* is not the law in this Circuit.

Nor, in any event, has plaintiff demonstrated that any "barrier" or "hindrance" exists that would prevent the check recipients from pressing these constitutional claims without plaintiff's help. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (citations and quotation marks omitted); *see Keepers*, 807 F.3d at 41. Plaintiff asserts that check recipients "are unaware that . . . their money is outstanding and can be claimed" and that "their constitutional rights are being violated because [DOF] is canceling their checks and seizing their property without notice." Pl.'s Opp'n 13. But a taxpayer who receives a tax refund check in the mail cannot be said to be unaware of the funds he is owed. And a taxpayer who attempts to cash or deposit a check that DOF has canceled will of course know that DOF prevented him from collecting the funds he was due. There is nothing stopping a taxpayer faced with these circumstances from filing suit to challenge DOF's actions.

Accordingly, plaintiff has failed to demonstrate either that he has "a close relationship to" the recipients of canceled checks or that "a barrier" exists that prevents check recipients from "assert[ing their] own interests." *Keepers*, 807 F.3d at 41. Plaintiff therefore lacks third-party standing to assert constitutional claims on their behalf.

8

## II.     Plaintiff's FOIL-Based Claims Are Also Dismissed

Defendant's motion to dismiss plaintiff's FOIL-related claims is likewise granted. Liberally construed, the complaint raises two claims related to plaintiff's September 2021 FOIL request. First, plaintiff can be understood to argue that DOF's partial denial of that request violated his constitutional rights. *See* Compl. ¶ 63. Second, plaintiff alleges that DOF violated its FOIL obligations under state law. *See id.* ¶ 8. As defendant argues, *see* Mot. to Dismiss 12, plaintiff has failed to plausibly allege that DOF's denial of his FOIL claim violated any of his constitutional rights. And with that claim dismissed, I decline to exercise supplemental jurisdiction over plaintiff's substantive FOIL claims.

### A. Plaintiff Has Not Alleged a Sufficient Property Interest to Sustain His FOIL-Based Constitutional Claims

Plaintiff asserts that DOF's refusal to provide him with the names and addresses of check recipients denied plaintiff the "opportunity to develop a business relationship with [check recipients] who have unclaimed money" in violation of his "Due Process Equal Protection rights." Pl.'s Opp'n 9–10, 20; *see* Compl. ¶¶ 41, 60.

Liberally construed, plaintiff's assertions are best understood as alleging a due process claim rather than an equal protection claim. To state "a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Yet here, plaintiff has failed to allege that he was treated differently from anyone. Indeed, beyond uttering the phrase "equal protection," plaintiff has failed to develop his equal protection claim at all. *See* Compl. ¶ 63; Pl.'s Opp'n 20. Thus, even if the complaint is understood to allege an equal protection claim, such a claim would have to be dismissed. *See Quinones v. New York City*, No. 19-CV-5400, 2022 WL 4787402, at *1 (S.D.N.Y. Oct. 3, 2022) (dismissing equal protection

9

claims of *pro se* plaintiff whose allegations of differential treatment were "conclusory"); *Harris v. Nassau County*, No. 13-CV-4728 (NGG) (ST), 2016 WL 3023256, at *6 (E.D.N.Y. May 24, 2016) (same); *Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist.*, No. 96-CV-4702 (JG), 2000 WL 134346, at *7 (E.D.N.Y. Feb. 1, 2000) (same).

And to state a claim for relief under the due process clause, a plaintiff must allege that he was (1) deprived of a protected property interest (2) without adequate process. *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)). Construed liberally, plaintiff's complaint may also be read to assert a protected property interest in either the withheld information or in potential business relationships with check recipients whose contact information DOF refused to provide him. *See* Compl. ¶¶ 41, 60; Pl.'s Aff. ¶ 62 n.3 ("[T]he Supreme Court has recognized a property interest in one's livelihood."). Both arguments fail.

First, plaintiff has no protected property interest in the information he requested from DOF. Under New York's FOIL, a record-holder need only produce documents "after a request and investigation by the state entity"; as a result, "individuals making such request[s] do not have anything beyond a mere expectation in such documents, and, thus, do not have an entitlement to requested documents that is protected by the Fourteenth Amendment." *Chalasani v. Daines*, No. 10-CV-1978 (RRM) (RML), 2011 WL 4465564, at *10 (E.D.N.Y. June 30, 2011) (quoting *Blount v. Brown*, No. 10-CV-1548 (ARR), 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010)), *report and recommendation adopted*, 2011 WL 4465408 (E.D.N.Y. Sept. 26, 2011); *see Simpson v. Town of Southampton*, No. 06-CV-6743 (JFB) (WDW), 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007) (collecting cases for the proposition that "a plaintiff has no property interest in obtaining FOIL documents"). Accordingly, "without the property interest in the documents required for due

10

process claims, the defendant['s] failure to provide the requested documents does not amount to a constitutional violation." *Chaslani*, 2011 WL 4465564, at *10.

Nor are the potential business opportunities plaintiff identifies protected property under the Fourteenth Amendment. The Supreme Court has held that there is no constitutionally protected property interest in "the activity of doing business" or "the activity of making a profit." *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (emphasis omitted). Moreover, the Court has recognized that a hypothetical, future property interest is not constitutionally protected unless the person claiming such an interest has "more than an abstract need or desire for it" or "a unilateral expectation of it"; instead, he must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see Prince v. County of Nassau*, 837 F. Supp. 2d 71, 100 (E.D.N.Y. 2011) (applying *Roth* in denying existence of protectible property interest in future business opportunities). Plaintiff pressed a similar claim in *Gelb II*, asserting that the government's mishandling of a request for certain information under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, deprived him of property in the form of "potential, future business relationships with the owners of unclaimed money accounts." *Gelb II*, 2017 WL 4129636, at *7. The court there held that, because those business relationships were "in no way assumed or guaranteed," they failed to amount to "a constitutionally protected property interest." *Ibid.* The same is true here. There is no guarantee that, were plaintiff to receive the information he requested from DOF, the check recipients would elect to do business with him. Plaintiff therefore has a mere "unilateral expectation" that these business relationships would come to be, and he lacks the "legitimate claim of entitlement" required to entitle him to property protections under the Fourteenth Amendment. *Roth*, 408 U.S. at 577. Plaintiff's due process claims are accordingly dismissed.

11

### B. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Substantive FOIL Claims

Having dismissed all of plaintiff's federal claims, I decline to retain jurisdiction over plaintiff's substantive FOIL claim. *See* 28 U.S.C. § 1367(3). Four factors bear on whether the exercise of supplemental jurisdiction is appropriate: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Generally, where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013); *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

Plaintiff has not provided a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's claim that DOF's rejection of his request in part violated its obligations under New York's FOIL.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted. Plaintiff may file an amended complaint within thirty days of the date of this Order. The new complaint must be captioned "First Amended Complaint" and shall bear the same docket number as this Order. Plaintiff is advised that the amended complaint will replace his original complaint. All further proceedings are stayed for

thirty days. If plaintiff does not file an amended complaint within thirty days, judgment shall be entered dismissing the case.

    SO ORDERED.

                                                   */s/ Rachel Kovner*
                                                   RACHEL P. KOVNER
                                                   United States District Judge

Dated: September 6, 2023
       Brooklyn, New York